MORRIS *v.* DAIKER, ADMR., ET AL.

(Decided July 11, 1929.)

*Mr. Harry Neal Smith,* for plaintiff.
*Mr. Clifford Brown* and *Mr. Fred E. Bruml,* for defendants.

HAMILTON, J. Plaintiff, Kate Morris, brought this action in the court of common pleas of Hamilton county, Ohio,

The action is in the nature of a creditor's bill under favor of Section 11760, General Code.

The defendant Albert Daiker, as administrator, demurred to the petition, first on the ground that the petition did not set forth a cause of action against him; and, second, that there was a misjoinder of parties. The court overruled the demurrer, and exceptions were reserved.

The defendant Bruml, trustee, filed a motion to quash service on the ground that there is no joint interest between the defendants Daiker, administrator, and Bruml, trustee, that would permit service on Bruml, a non-resident of Hamilton county.

If there was a misjoinder of parties, then the motion to quash should have been granted, since the only way in which Bruml, trustee, could be held would be through the proper joinder of parties defendant. This motion was overruled by the court and exceptions reserved.

The case went to trial on the merits, resulting in a judgment for the defendants. From that judgment, plaintiff, Kate Morris, prosecutes appeal to this court.

The petition alleged, in substance, that Daiker was executor of the estate of James S. Hoffheimer, deceased; that Fred E. Bruml was executor and trustee of the estate of Fannie Hoffheimer, deceased; that James S. Hoffheimer was legatee and beneficiary under the will of Fannie Hoffheimer; that Bruml, trustee, should hold the legacy for the use and benefit of said James S. Hoffheimer, and at his death pay the balance to the other named legatees; that James S. Hoffheimer died on the 18th day

of February, 1923; that August 31, 1923, the plaintiff brought an action in the court of common pleas against Daiker, administrator of the estate of James S. Hoffheimer, and recovered a judgment against him for $3,192, which judgment stands unreversed and is unpaid. Then follows the allegation that the plaintiff made the demand upon Daiker, administrator, to file his petition against Bruml, trustee, for the amount of the judgment, and Daiker refused. Upon his refusal, plaintiff brought this action as judgment creditor of the estate of James S. Hoffheimer, and alleges that the estate of James S. Hoffheimer is insolvent.

While there may be doubt as to the sufficiency of the petition to bring the plaintiff within the provisions of Section 11760, General Code, we are not inclined to determine the case on that ground.

The same may be said with reference to the second ground of the demurrer, regarding the defect of parties.

We will, therefore, pass the technical objections and go to the main question in the case, which is decisive of the right of the plaintiff to recover in this proceeding and turns on the construction to be given to the will of Fannie Hoffheimer, deceased, and the interest thereunder of the said James S. Hoffheimer. The pertinent parts of the will are as follows:

"Item II. * * * The rest and residue of my estate, both real and personal, I give, devise and bequeath to Fred E. Bruml in trust for the benefit of all my children equally; * * * and to hold as trustee for each of my sons, Samuel and James,

the respective share of each and the proceeds thereof for and during the life of each of them respectively, and to pay during his trusteeship to them respectively, at convenient intervals, the net income of their respective trust properties, with power at any time to sell and dispose of the same or parts thereof, to invest and reinvest the proceeds thereof, and also at any time whenever he deems proper during their respective lives to deliver to any or either of them any part of the capital of his share * * *.''

''Item V. I hereby empower my said trustee in his discretion to invest and re-invest all my property or the proceeds thereof and for that purpose to make, execute, deliver and accept any and all instruments in writing that he may think proper and necessary for the execution of said powers; and I also empower him at any and all times, from the net collected income credited to the share of any beneficiary herein, to appropriate and pay such sums as he may deem proper toward defraying the current expense that may be incurred for the care, maintenance and education of such beneficiary.''

It is argued by counsel for the plaintiff that, plaintiff's judgment being based on the furnishing of food, care, and lodging to the deceased James S. Hoffheimer during his lifetime, Bruml, trustee, became liable therefor as such, for the reason that the trustee was bound by the provisions of Item II of the will for at least furnishing the necessaries of life to the beneficiary, and that the judgment is conclusive that the said necessaries were not furnished by said trustee.

It is not claimed that any demand was ever made

on the trustee by James S. Hoffheimer during his lifetime; nor was there any arrangement or acquiescence shown on the part of Bruml, trustee, regarding such furnishings.

It is also in the record that James S. Hoffheimer during his lifetime received all the net income and more.

We are, therefore, of the opinion that the question turns on whether or not, under the terms of the will, James S. Hoffheimer had a vested interest in the income and capital in the share devised by the will.

The will provides that the share of James S. Hoffheimer shall be held by the trustee for him during his lifetime, and that the trustee shall pay during the trusteeship to James S. Hoffheimer, *at convenient intervals,* the net income of his trust property, with power at any time to sell and dispose of the same, or any part thereof; to invest and re-invest the proceeds thereof, and also, at any time *whenever he deems proper* during the life of James S. Hoffheimer, to deliver to him any part of the capital of his share. The share of James S. Hoffheimer, being for his life only, is to fall into the trust "hereinbefore provided." At the death of James S. Hoffheimer, the trustee shall deliver all the remainder in his hands which was held in trust during his life "to my other children equally." The question, therefore, amounts to this: Did the provisions of the will give to James S. Hoffheimer a vested interest which empowered him to create debts for maintenance, without the knowledge, consent, or approval of the trustee, and thereby enable the debtor to collect the claim from the capital share?

An examination of the authorities leads us to the conclusion that the law applicable here is presented in the case of *Brooks, Exr.,* v. *Raynolds,* 8 O. F. D., 78 [(C. C. A.), 59 F., 923]. The fourth, fifth, and sixth paragraphs of the syllabus are as follows:

"4. A will giving testator's property to his executor to expend the income in his discretion for the benefit of testator's son and his family with power to advance any portion of the final share of the estate to either of testator's grandchildren, unexpended income to be held in trust until expended or otherwise disposed of 'to the end that the same shall be applied as my said executor shall deem best, and not otherwise,' for the benefit of such son and his family, and any portion of such income which can be invested for the benefit of the son shall be held in trust by the executor to be expended for the son's benefit, or paid to him as the executor shall deem best, does not give the son a vested interest in surplus income, so as to make it absolutely his property and subject to his debts.

"5. A trust created by a will giving testator's property to the executor to apply so much of the income as he shall see fit, in his discretion, for the benefit of testator's son and his family with the right to refuse to him a separate support or pay over any of the income is not within Section 5464, Ohio Rev. Stat., providing that any equitable interest which a judgment debtor has in real estate or joint stock company, or money, contract, claim, or chose in action, or in any money, goods, or effects in the possession of any person shall be subject to the payment of the judgment by action.

"6. Section 5464 Ohio Rev. Stat. [now Section 11760, General Code], giving judgment debtors an action to reach equitable and other interests which are not subject to levy, gives no right to subject income held in trust for mere maintenance and support, and in which the debtor has no vested interest, as such statute should not be regarded as dealing with substantive laws of property, but merely as extending the remedy of creditors to property interests, not subject to seizure by execution."

While the *Brooks case* only dealt with income, the principle announced would apply to the discretionary use of the capital on the part of the trustee.

In the course of the opinion in the *Brooks case*, the court observes that under such a trust there is no such vested interest as can be reached by his creditors; that which is given to him is not the income, the trust is for his maintenance and support, and that this is all that he could compel the trustee to furnish.

In this case the trustee is not bound to use the whole income, if a less sum, in his discretion, is sufficient. He did see fit to expend the whole of the income. If Hoffheimer had any vested right to the income, under the record of this case, that right was fully discharged, since the whole of the income was expended for his benefit. The expenditure of any of the capital share was wholly within the discretion of the trustee. His judgment as to this could not be controlled, so long as he acted in good faith. If during the life of James S. Hoffheimer there was absolute need for use of a part of the capital share, and the same was brought to the knowledge of the

trustee, then, and in that case, the discretion of the trustee, refusing support and maintenance from the capital share, might have been brought in question.

In 1 Perry on Trusts & Trustees (7th Ed.), Section 386a, the author states: "But a trust may be so created that no interest vests in the *cestui que* trust; consequently, such interest cannot be alienated, as where property is given to trustees to be applied in their discretion to the use of a third person, no interest goes to the third person until the trustees have exercised this discretion." This rule is applicable here. If the *cestui que* trust had no alienable interest in the income or capital share, it is difficult to see how his creditor could, through contractual relation with the *cestui que* trust only, seize the fund by a proceeding in aid of execution.

We are, therefore, of the opinion that the plaintiff, the judgment creditor, cannot reach this capital share to satisfy her judgment.

A decree for the defendants will be entered.

*Decree for defendants.*

Cushing and Ross, JJ., concur.