RALPH A. NAYLOR, EXECUTOR (ESTATE OF KATHERINE W. DURYEA), ET AL. *v.* F. GEORGE BROWN, TAX COMMISSIONER

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued May 7—decision released July 2, 1974

*William W. Sprague* and *Frank S. Berall,* for the plaintiffs.

*Irving L. Levine,* inheritance tax attorney, with whom, on the brief, were *Robert K. Killian,* attorney general, and *Robert J. Hale,* first assistant tax commissioner, for the defendant.

HOUSE, C. J. This is an appeal from a decree of the Probate Court for the district of Madison which was reserved by the Superior Court for the advice of this court. The parties stipulated to the pertinent facts and submitted four questions upon which the advice of this court is sought.[1]

On February 15, 1967, J. Frank Duryea, hereafter referred to as the donor, died testate. In his will which he had executed on November 7, 1960, Duryea granted to his wife, Katherine W. Duryea, hereinafter referred to as the decedent or donee, a general testamentary power of appointment over the residue of a marital deduction trust created for her benefit. Under the terms of that will, upon the decedent's failure to exercise her general power of appointment, the trust residue would pass to one of the plaintiffs, George R. Duryea, the son of the donor and the decedent's stepson.

---

[1] "1. Does Section 12-345a of the General Statutes permit taxation in the decedent's estate of the transfer of the marital deduction trust created under the will of her husband, J. Frank Duryea?

"2. Does the application of the succession tax to the power of appointment granted decedent under the will of her husband violate the provisions of Section 55-3 of the Connecticut General Statutes?

"3. Are the provisions of Section 12-345a of the Connecticut General Statutes in violation of the due process provisions of Article I Section 8 of the Connecticut Constitution, as applied to this estate?

"4. Are the provisions of Section 12-345a of the Connecticut General Statutes in violation of Section 1 of the Fourteenth Amendment to the United States Constitution, as applied to this estate?"

The donor's net taxable estate was computed in the Probate Court to be $4,094,200.49. Since it was impossible to ascertain who would succeed to the remainder interest in the trust because of the decedent's power to appoint, a compromise succession tax in the total amount of $378,067.43 was paid by the donor's estate on August 11, 1969, pursuant to the provisions of § 12-355 of the General Statutes. This statute permits a fiduciary and the tax commissioner to agree upon an equitable computation when "the tax cannot be determined because of a contingency as to who will take." Under the § 12-355 agreement, the decedent's life estate was valued at $174,789.66, and the remainder interest in the marital deduction trust was valued at $1,855,193.28. A receipt for the payment of the taxes on the donor's estate was issued by the defendant tax commissioner on August 15, 1969.

The decedent had executed her will on March 8, 1962, and on June 6, 1967, she executed a codicil to that will wherein she exercised her power to appoint "only to the extent of such taxes, federal or state, as may be levied or assessed against the non-exercise of said power of appointment, which I exercise for the benefit of my estate solely for the purposes of paying said taxes." The decedent expressly did not exercise the power as to the remainder of the trust assets.

The decedent died on February 18, 1971, her will and codicil were admitted to probate, and on March 12, 1971, the named plaintiff, Ralph A. Naylor, qualified as executor of her estate. As executor, the plaintiff reported as nontaxable the power of appointment granted the decedent by her husband. The defendant tax commissioner claimed that the

decedent's exercise in part and nonexercise in part of the general power of appointment was a taxable transfer. The Probate Court agreed with the contention of the tax commissioner and held that "both the exercise and non-exercise by the decedent of the power of appointment given her in the will of J. Frank Duryea, constitute at her death on February 18, 1971 a taxable transfer under Section 12-345a of the General Statutes." The present appeal was taken from that decision.

The first question reserved for our advice is: "Does Section 12-345a of the General Statutes permit taxation in the decedent's estate of the transfer of the marital deduction trust created under the will of her husband, J. Frank Duryea?"

The General Assembly first applied the succession tax to the devolution of property by the exercise or failure to exercise a power of appointment in 1909 (Public Acts 1909, c. 218, § 5). These tax provisions were revised in 1915 (Public Acts 1915, c. 332, § 13) and in 1923 (Public Acts 1923, c. 190, § 3). The 1930 Revision of the General Statutes did not contain a similar provision and appointed property remained nontaxable until the enactment of Public Acts 1969, No. 796, which was incorporated in the General Statutes as § 12-345a. This enactment was subsequently revised by Public Acts 1972, No. 290 (now General Statutes § 12-345b). See 3 Locke & Kohn, Conn. Probate Practice § 7; Wilhelm, Conn. Estates Practice, Death Taxes (Rev. Ed.) §§ 7, 40.

"[T]he question whether any particular transfer is or is not taxable should logically depend on the terms of the statute in force at the time the transfer takes place." *Blodgett* v. *Union & New Haven Trust*

*Co.,* 97 Conn. 405, 409, 116 A. 908. The applicable law at the time of the decedent's death was then § 12-345a of the General Statutes, enacted as Public Acts 1969, No. 796, § 3 of which provided that "[t]his act shall take effect January 1, 1970, and shall apply to estates of persons dying on or after that date."[2]

The plaintiffs rely heavily on *McMurtry* v. *State,* 111 Conn. 594, 151 A. 252, for their claim that the estate to which the quoted provisions of § 12-345a refer is not taxable as a part of the estate of the donee since under settled common-law principles applicable to future interests an appointee under a testamentary power of appointment derives title from the will of the donor and that legal title to the appointed property never vests in the donee and forms no part of his estate. In *McMurtry* the concept was stated thusly (p. 601): "The appointee really takes from the original testator, the donee of the power acting as a mere conduit of the former's bounty," quoting *Bartlett* v. *Sears,* 81 Conn. 34, 42, 70 A. 33.

In the *McMurtry* case, decided in 1930, this court held that Connecticut could not constitutionally levy

---

[2] The relevant portions of Public Acts 1969, No. 796, § 1, provided: "Every transfer of property which, if from a resident or nonresident of this state, would be subject to tax imposed and be taxable under chapter 216 of the general statutes, as amended, and which occurs after January 1, 1970, as a result of (a) the exercise of a general or special power of appointment, or (b) the omission or failure to exercise in whole or in part such a general power of appointment, shall be taxable under said chapter 216 in the same manner and to the same extent as if such property had belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will. Nothing contained herein shall be deemed to relieve from taxation, under said chapter 216, in the estate of the donor of a general or special power of appointment, the transfer of the property subject to such power."

a succession tax under the 1923 tax provision upon the transfer of the principal of a trust by the exercise of a Connecticut resident's general power of appointment when New York was the situs of the trust and the place of residence of the donor of the power. The court in *McMurtry* felt compelled, under the authority of *Wachovia Bank & Trust Co.* v. *Doughton*, 272 U.S. 567, 47 S. Ct. 202, 71 L. Ed. 413, to hold that "it was not within the power of this State to impose a succession tax upon the transfer of this fund." *McMurtry* v. *State*, supra, 605. The *Wachovia* decision was, however, later expressly overruled in *Graves* v. *Schmidlapp*, 315 U.S. 657, 62 S. Ct. 870, 86 L. Ed. 1097, 141 A.L.R. 948, decided in 1942. In *Graves*, as in *Wachovia* and in *McMurtry*, the question presented to the court was the extent to which a state could levy a succession tax upon an extraterritorial appointive estate. The court in *Graves* concluded (p. 662): "Since it is the exercise of the power to dispose . . . which is the taxable event, the mere fact that the power was acquired as a donation from another is without significance. We can perceive no ground for saying that its exercise by the donee is for that reason any the less the enjoyment of a property right, or any the less subject to taxation at his domicile."

The basis of the succession and transfer tax is "the right of possession or enjoyment of property rather than the vesting in interest . . . . *Dolak* v. *Sullivan*, 145 Conn. 497, 502, 144 A.2d 312." *Pape* v. *Sullivan*, 151 Conn. 39, 43, 193 A.2d 480; *Seymour Trust Co.* v. *Sullivan*, 152 Conn. 282, 206 A.2d 420. The taxable incident is "the shifting of the enjoyment of property—the economic benefits thereof or economic interests therein." *Miller* v. *Connelly*, 142 Conn. 144, 148, 112 A.2d 202; *Pape* v. *Sullivan*,

supra; *Fabian* v. *Walsh,* 134 Conn. 456, 460, 58 A.2d 384; 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, § 105. Upon her death, the decedent by will was free to bequeath the subject-matter of the power to whomever she wished, including her own estate, and the donor's son received no less as the taker in default under the donor's testamentary trust than he would have received had the decedent expressly exercised the power on his behalf. " '[T]axation is not so much concerned with the refinements of title as it is with the actual command over the property taxed.' [Citations omitted.]" *Estate of Sanford* v. *Commissioner of Internal Revenue,* 308 U.S. 39, 43, 60 S. Ct. 51, 84 L. Ed. 20.

Taxing statutes are to be strictly construed. *Connecticut Light & Power Co.* v. *Sullivan,* 150 Conn. 578, 582, 192 A.2d 545. In the enactment of Public Acts 1969, No. 796, however, it is obvious that the General Assembly did not deal with what Mr. Justice Frankfurter called the "recondite niceties of property law." *Estate of Rogers* v. *Helvering,* 320 U.S. 410, 414, 64 S. Ct. 172, 88 L. Ed. 134. That act unequivocally reaches the transfer of economic benefits to an appointee upon an exercise of a power of appointment by a donee and to a taker in default by the omission of its exercise notwithstanding prior taxation in the donor's estate. See *In re Estate of Grady,* 79 Wash. 2d 41, 483 P.2d 114; Thompson, "Inheritance Taxation and Powers of Appointment," 1939 Wis. L. Rev. 254, 263–70; cf. Wilhelm, Conn. Estates Practice, Death Taxes § 40; 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, §§ 40, 139; notes, 18 A.L.R. 1470, 1475, 23 A.L.R. 738, 64 A.L.R. 740, 741, 124 A.L.R. 653, 655, 141 A.L.R. 954, 955, 150 A.L.R. 730, 732, 174 A.L.R. 635, 637. "The imposition of a tax is a legislative function and in

its application the courts have no choice but to follow the intent of the legislature. Here that intent is clearly and plainly expressed so as to apply to the transfer under consideration. Any feelings of apparent inequity dissolve if we bear in mind that 'the thing burdened is the right to receive.' *Leach* v. *Nichols,* . . . 285 U.S. 165, 169 [52 S. Ct. 338, 76 L. Ed. 681]." *Bishop Trust Co.* v. *Burns,* 46 Haw. 375, 402, 381 P.2d 687, rehearing denied, 46 Haw. 474, 381 P.2d 703.

We find no ambiguity in the statute. Its provisions are clear. Even though in common-law property concepts the appointee takes from the donor of the power of appointment rather than from the donee of the power, nevertheless the tax is clearly levied on the transfer of the interest which occurs "as a result of" the donee's exercise or failure to exercise the power of appointment. If this express provision of the statute were not sufficient in itself to rebut just such an argument as the plaintiffs advance, based upon common-law property concepts, the statute expressly clarifies its intent and effect— that the exercise or omission to exercise a power of appointment shall be taxable "in the same manner and to the same extent as if such property had belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will."

The answer to the first question reserved is "Yes."

The remaining three questions[3] present the comprehensive issue as to whether the statute, as applied to the decedent's appointive estate, represents a retrospective application of a statute, pro-

[3] See footnote 1, supra.

hibited by § 55-3 of the General Statutes.[4] The plaintiffs assert that it does, since at the time the donor created the power of appointment such powers were not taxable. They claim, therefore, that the tax is a deprivation of property without due process of law in violation of the constitution of the United States, amendment XIV, § 1, and the constitution of Connecticut, article first, § 8.

Since the interest of a taker in default of the exercise of a power of appointment is entirely contingent upon the failure of a donee to exercise a power previously created, in concurrence with the great weight of authority we conclude that the legislature's imposition of the tax to take effect at the time in the future when the taker in default enters into possession and enjoyment of that property is not retrospective in operation and is not unconstitutional. *Saltonstall* v. *Saltonstall,* 276 U.S. 260, 48 S. Ct. 225, 72 L. Ed. 565; *Chanler* v. *Kelsey,* 205 U.S. 466, 27 S. Ct. 550, 51 L. Ed. 882; *Orr* v. *Gilman,* 183 U.S. 278, 22 S. Ct. 213, 46 L. Ed. 196; see *People* v. *Cooke,* 150 Colo. 52, 60–61, 370 P.2d 896; 42 Am. Jur. 2d, Inheritance, Estate, and Gift Taxes, §§ 46, 47, 136, 137; 85 C.J.S., Taxation, § 1117 (c); 16A C.J.S., Constitutional Law, § 419 (c); Thompson, op. cit., pp. 263–66; cf. *Commonwealth* v. *Carter,* 198 Va. 141, 92 S.E.2d 369; *Montague* v. *State,* 163 Wis. 58, 157 N.W. 508. "It is of no consequence that the statute in question was adopted after the creation of the trust. The tax is a succession tax and is imposed

---

[4] "[General Statutes] Sec. 55-3. LIMITATION OF EFFECT OF CERTAIN ACTS. No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

upon the transfer of property. [Citation omitted.] The transfer involved here was not complete at the time the statute was adopted and did not become so until default in the exercise of the special power of appointment. Under such circumstances, the statute is not invalid as operating retrospectively. *Saltonstall* v. *Saltonstall*, 276 U.S. 260, 48 S. Ct. 225, 72 L. Ed. 565; *Montague* v. *State*, . . . [163 Wis. 58, 157 N.W. 508]." *People* v. *Cooke*, supra.

In *Saltonstall* v. *Saltonstall*, supra, the United States Supreme Court found no constitutional obstacle to the imposition of a state succession tax upon property passing under a deed of trust to beneficiaries although the trust was established prior to the enactment of the taxing statute. Even more persuasive is that in *Saltonstall* the settlor who reserved to himself a life estate and the right to revoke his grant of the remainder interest possessed a far more significant interest under traditional concepts of ownership than the decedent herein. "It it almost impossible to distinguish this case from the case of the non-exercise of a power which was created before the tax act was enacted." Thompson, "Inheritance Taxation and Powers of Appointment," 1939 Wis. L. Rev. 266. In *Chanler* v. *Kelsey*, supra, 473–74, the United States Supreme Court stated: "However technically correct it may be to say that the estate came from the donor and not from the donee of the power, it is self-evident that it was upon the exercise of the power that the estate in the plaintiffs in error became complete." In *Orr* v. *Gilman*, supra, 286, that court expressly noted that it was neither the purpose nor the function of the fourteenth amendment to interfere with the system and policies of a state in the taxation of estates.

The plaintiffs had no contract with the donor or with the state and the latter was not deprived of its sovereign right to tax the succession of wealth in the estate of a domiciliary simply because the decedent in her will chose one set of words instead of another. "[T]he sovereign's control over his person and estate at the place of his domicile, and his duty to contribute to the financial support of government there, afford adequate constitutional basis for the imposition of a tax. *Curry* v. *McCanless*, 307 U.S. 357 [59 S. Ct. 900, 83 L. Ed. 1339, 123 A.L.R. 162]; cf. *Graves* v. *Elliott*, 307 U.S. 383 [59 S. Ct. 913, 83 L. Ed. 1356]." *Graves* v. *Schmidlapp*, 315 U.S. 657, 660, 62 S. Ct. 870, 86 L. Ed. 1097. The answer to the remaining questions is "No."

In summary, we advise the Superior Court that the answer to the first of the reserved questions is "Yes" and the answer to the other three questions is "No."

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.