OREST T. DUBNO, COMMISSIONER OF REVENUE
SERVICES *v.* EDWARD T. FALSEY, JR.,
ET AL., EXECUTORS (ESTATE OF
EDWARD T. FALSEY)
(3394)

EVELYN F. DWYER ET AL., EXECUTORS (ESTATE OF
EMMA R. FALSEY) *v.* OREST T. DUBNO,
COMMISSIONER OF REVENUE SERVICES
(3395)

DUPONT, C. J., HULL and SPALLONE, Js.

Argued January 13—decision released March 10, 1987

James O'Connor Shea, with whom was *Herbert D. Fischer,* for the appellants (defendants in the first case, plaintiffs in the second case).

*Richard D. Nicholson,* tax attorney, with whom, on the brief, were *Joseph I. Lieberman,* attorney general, and *Albert E. Sheary,* first assistant commissioner of revenue services, for the appellee (plaintiff in the first case, defendant in the second case).

DUPONT, C. J. The primary issue of these appeals, which were heard together in this court and in the Superior Court, is whether the estate of a donor of a general power of appointment over the assets of a marital trust is entitled to a refund of the entire succession tax paid on the assets if those assets are also taxed in the estate of the power's donee who died in 1977. The donor of the power of appointment had died in 1963.[1]

---

[1] The estates of the donor and donee of the general power of appointment phrase the issues as follows:

Estate of Edward T. Falsey: "Did the court err in finding that the appointees under Emma R. Falsey's will are taxable in the estate of Edward T. Falsey as having received the remainder interest of the corpus of the Marital Trust from Edward T. Falsey in addition to being taxed in Emma R. Falsey's estate as having received the same remainder interest of the corpus of the Marital Trust from Emma R. Falsey?"

The relevant facts involved in these appeals are not in dispute and are the subject of a stipulation of facts. Edward T. Falsey, Jr., died testate on August 20, 1963, and was survived by his wife, Emma R. Falsey, and two of their children. The will of Edward Falsey established a marital trust for her benefit, and gave her a general power of appointment exercisable by her will over the residue of the trust assets. If the power were not exercised, his will provided that the assets would go to their children. In fact, Emma Falsey in her will exercised the power in favor of the children. She died on September 17, 1977. The estate of Edward Falsey paid the succession tax on the entire value of the trust assets, the tax being computed as though the assets had been inherited by class C beneficiaries.[2] In making the payment, the estate rejected a compromise of the tax offered by the commissioner of revenue services (commissioner) pursuant to General Statutes § 12-355 (a).[3]

Upon the death of Emma Falsey, the executors of the estate of Edward Falsey sought a recomputation of the succession tax. The tax was recomputed, based on the then certain fact that the assets had passed to the children of Edward Falsey. The taxing rate used in the recomputation was that for Class A beneficiaries, rather than Class C beneficiaries. On the basis of that recomputation, it was determined that a refund was due to the estate of Edward Falsey, together with inter-

---

Estate of Emma R. Falsey: "Did the court err in finding that the Falsey children are taxable in the estate of Emma R. Falsey as having received the remainder interest of the corpus of the Marital Trust from Emma R. Falsey in addition to being taxed in the estate of Edward T. Falsey as having received the same remainder interest of the corpus of the Marital Trust from Edward T. Falsey?"

[2] General Statutes § 12-344 establishes classes of beneficiaries, depending upon their familial relationship or lack thereof, to the decedent. Different rates of succession tax apply to each class. The highest rate of tax is incurred when property of a decedent passes to class C beneficiaries.

[3] General Statutes § 12-355 (a) provides in pertinent part that "if the tax cannot be determined because of a contingency as to who will take, the

est at the rate of 2 percent per annum. His estate objected to the recomputation, claiming that the value of the trust interest should not have been included in the estate. The Probate Court held that the remainder interest in the marital trust should not be taxed in the estate of the donor of the power of appointment and that the refund due should carry interest at the rate of 4 percent per annum. The commissioner appealed to the Superior Court, which rendered judgment that the marital trust assets were includible in the estate of Edward Falsey, and that interest was due on the overpayment at the rate of 4 percent per annum. The executors of the estate of Edward Falsey appeal from that judgment.

The Probate Court found that the assets of the marital trust were taxable in the estate of Emma Falsey, the donee of the power of appointment. The executors of her estate appealed from the decision to the Superior Court which upheld the decision of the Probate Court. The executors of the estate of Emma Falsey appeal from the judgment of the Superior Court.[4]

Before we discuss the particular succession tax statutes existing at the times of the deaths of the donor and the donee of the power of appointment, two facts should be highlighted. The estate of Edward Falsey did not claim at the time of his death that the marital trust assets, which were the subject of the power of appointment, were not taxable at all in his estate. At that time, the only question left unresolved was the *amount* of the ultimate succession tax due, to be based on a future recomputation of it when the contingency as to who

commissioner of revenue services . . . may enter into an agreement with the fiduciary to compound the tax upon such terms as may be deemed equitable . . . ."

[4] The brief filed on behalf of the estate of Emma Falsey recognizes that the succession tax cannot be eliminated in both estates and urges this court to grant relief in either of the estates it deems appropriate, although it claims that a refund of the succession tax paid in the estate of Edward Falsey is a better result.

would take the trust assets was known.[5] See General Statutes § 12-355 (b). In contrast, the estate of Emma Falsey claimed on its succession tax return that the remaining corpus of the marital trust was not taxable at all in her estate.

At the time of Edward Falsey's death, the assets of a general power of appointment over a marital trust were includible in his gross estate; General Statutes § 12-341b; although the exercise of the power of appointment by the donee of the power was not includible in the donee's estate upon the subsequent death of the donee.

General Statutes § 12-345a, enacted in 1969, provided that the exercise of, or the failure to exercise, a power of appointment occurring after January 1, 1970, is taxable in the same manner and to the same extent as if the property had belonged absolutely to the donee and had been devised or bequeathed by the donee.[6] The estate of Emma Falsey claims that when the donor created the power of appointment, the exercise of such a power was not taxable, and that the application of

---

[5] The parties do not raise the issue, but there is some doubt as to whether the estate of Edward Falsey, having made no claim as to nontaxability, and having taken no appeal from the proposed eventual inclusion of the marital trust assets in the estate, can claim, sixteen years later, that the assets should not be included in the estate. See *Heffernan* v. *Slapin,* 182 Conn. 40, 438 A.2d 1 (1980). The computation of the succession tax prepared by the commissioner in 1966 states that the estate waived a hearing on the computation of the tax.

[6] General Statutes § 12-345a took effect on January 1, 1970, and applied to estates of persons dying on or after that date. The relevant portion of § 12-345a provided: "Every transfer of property which . . . would be subject to tax imposed and be taxable under chapter 216 of the general statutes, as amended, and which occurs after January 1, 1970, as a result of (a) the exercise of a general or special power of appointment . . . shall be taxable . . . in the same manner and to the same extent as if such property had belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will."

General Statutes § 12-345a was revised by Public Acts 1972, No. 290 and is now General Statutes § 12-345b.

§ 12-345a to this estate was therefore unconstitutional. This argument has, however, been rejected. *Naylor* v. *Brown,* 166 Conn. 581, 589–90, 353 A.2d 709 (1974). The imposition of a tax on such assets in the estate of the donee of the power is proper as a tax on the transfer of assets even if that tax did not exist as of the date of the creation of the power of appointment. Id.

An analysis of *Naylor* leads us to the conclusion that in the present case, the transfer of the assets of the marital trust to the appointees by the exercise of the power of appointment was a taxable event even though the power had been created when there was no statute making the transfer taxable. In *Naylor,* the donor of the power of appointment had died in 1967, prior to the passage of General Statutes § 12-345a. The donee of the power died in 1971, after the passage of the statute. The only difference between this case and *Naylor* is that, in *Naylor,* the tax was compromised in the estate of the donor prior to the passage of the statute and prior to the transfer of the assets upon the death of the donee. At the time of the death of the donors in both *Naylor* and the present case, General Statutes § 12-355 provided that the estate might either compromise the tax or wait until the particular appointees were known so that the tax might be recomputed. Section 12-355 (b) provides that if there is no agreement between the commissioner and the fiduciary of the estate as to the amount of succession tax in those instances in which it is not known who will take property transferred, the recomputation will be done "in the same manner as it would have been done originally had the outcome of the contingencies in question been known."

The estate of Edward Falsey argues that the fact there was a compromise in *Naylor,* thereby closing the donor's estate for succession tax purposes, necessitates a different result here because the Falsey estate

remained open until the death of the donee. Whether or not the estate of Edward Falsey chose to compromise the succession tax due leaves unaltered the fact that the statutes existing at the time gave the estate the right to gamble that the ultimate appointees by the donee of the power would be class A beneficiaries.[7] It took that gamble and the estate remained open for succession tax purposes because of that action. The result reached in *Naylor,* that the transfer of the marital trust assets which were the subject of a general power of appointment was taxable in both the estates of the donor and the donee, did not turn on whether the succession tax was the subject of a compromise in the estate of the donor. Its result would not be different if there had been no compromise.

In 1963, the year of the death of Edward Falsey, and in 1967, the year of the death of the donor of the appointment in *Naylor* v. *Brown,* § 12-345e had not yet been passed. It became effective in 1972, and provides in pertinent part that "[n]othing contained in sections 12-345b to 12-345e, inclusive, shall be deemed to relieve from taxation . . . in the estate of the donor of a general power of appointment, the transfer of the property subject to such power." Section 12-345e was amended in 1974 for clarification purposes to make it clear not only that both the estates of the donor and the donee would be taxed, but that the property transferred subject to the power would be deemed to pass entirely to the donee at the donor's death. *Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 377 A.2d 305 (1977). If Edward Falsey had died in 1972, there would have been no need to recompute the tax due

---

[7] The compromise offered was based upon the lowest possible tax plus one half the difference between the highest and lowest possible tax. Thus, had the tax been paid in accordance with the compromise it would have been greater than the amount of the tax as it was eventually recomputed upon the death of the donee of the power of appointment.

because § 12-355 would not have been applicable since there would have been no contingency which must be awaited. See id. The entire value of the trust would have been taxed at the rate applicable to the donee as a class AA beneficiary. Since the taxability of the transfer depends upon statutes in force as of the date of the transfer, however, the recomputation in the present case was done as though General Statutes § 12-345e did not exist. See *Naylor* v. *Brown,* supra, 584.[8]

The rock upon which both estates attempt to build is the claim that the assets of the marital trust cannot be taxed in both the donor's estate and the donee's estate when at the time of the donor's death the exercise of the power of appointment would not have been taxable. That rock crumbled under the authoritative weight of *Naylor* v. *Brown,* supra. By the time *Tax Commissioner* v. *Estate of Bissell,* supra, was decided three years later, it was well established that the transfer of such assets was taxable in both estates.

There is no error.

In this opinion the other judges concurred.

---

[8] The executors of the estate of Edward Falsey makes no claim that if the trust assets are includible in the donor's estate the tax rate to be applied should be that for a class AA beneficiary. Both estates in their briefs argue that the property transferred in the donor's estate passed to the donee of the power and not to the appointees, but never argue that the property should, therefore, have been taxed in the estate of Edward Falsey as though it had been transferred to a class AA beneficiary, rather than to class A beneficiaries. Instead, the argument is that the property should not have been included in the donor's estate at all. The brief filed in Emma Falsey's estate seems to argue that the appointees received nothing from the estate of Edward Falsey, and that because General Statutes § 12-345e had not yet been passed, the donee could not be said to have received the trust assets, and therefore that the assets could not be taxed at all in the estate of Edward Falsey, or alternatively, that if the assets are taxed in the former estate they could not be taxed in the estate of Emma Falsey because then the appointees would have been taxed twice on the same transfer.